**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
ROBERT K.                    :     Civ. No. 3:20CV00466(SALM)
                             :
v.                           :
                             :
KILOLO KIJAKAZI,[1] ACTING   :
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION      :     July 22, 2021
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Robert K. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves to reverse or remand the Commissioner's decision. [Doc. #23]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #35].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner [**Doc. #23**] is DENIED,

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021. She is now the proper defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

and defendant's Motion for an Order Affirming the Commissioner's
Decision [**Doc. #35**] is GRANTED.

I.  **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for DIB and SSI on March 9,
2017, alleging disability beginning on June 10, 2016. See
Certified Transcript of the Administrative Record, Doc. #19,
compiled on October 8, 2020, (hereinafter "Tr.") at 232-44.
Plaintiff's applications were denied initially on October 11,
2017, see Tr. 96-97, and upon reconsideration on February 13,
2018, see Tr. 124-25.

On December 21, 2018, plaintiff, represented by Attorney
Laura Ondrush, appeared and testified at a hearing before
Administrative Law Judge ("ALJ") Michael McKenna. See generally
Tr. 51-73. Vocational Expert ("VE") Richard Hall appeared and
testified by telephone at the hearing. See Tr. 51, 54, 70-73,
328. On January 30, 2019, the ALJ issued an unfavorable
decision. See Tr. 29-49. On March 16, 2020, the Appeals Council
denied plaintiff's request for review of the ALJ's decision,
thereby making the ALJ's January 30, 2019, decision the final

_____

[2] Simultaneously with his motion, plaintiff filed a Statement of
Material Facts. [Doc. #23-2]. Defendant filed a Response to
Plaintiff's Statement of Facts on March 3, 2021, see Doc. #35-2,
"generally agree[ing]" with plaintiff's statement of facts "with
the exception of any inferences and/or conclusions set forth by
Plaintiff, and with further clarifications or additions[.]" Id.
at 1.

decision of the Commissioner. <u>See</u> Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

## II.   <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that

finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

In reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).**

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Berryhill, No. 17CV04524(JS), 2018 WL 4783974, at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("'While the Act

was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect.'" (citation omitted)).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as

defined in the Social Security Act, from June 10, 2016, through"
January 30, 2019. Tr. 41.

At step one, the ALJ determined that plaintiff "has not
engaged in substantial gainful activity since June 10, 2016, the
alleged onset date[.]" Tr. 34.

At step two, the ALJ found that plaintiff "has the
following severe impairments: degenerative disc disease of the
lumbar spine and obesity[.]" Tr. 34. The ALJ further determined
that plaintiff "has presented with vertigo, atypical chest pain,
and hypertension." Tr. 35. The ALJ found these medically
determinable impairments to be "nonsevere" because they "do not
cause more than a minimal limitation in the claimant's ability
to perform basic work activities[.]" Tr. 35.

At step three, the ALJ determined that plaintiff's
impairments, either alone or in combination, did not meet or
medically equal the severity of any of the listed impairments in
20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 35. The ALJ
"considered all of the listed impairments, and, in particular,
1.00 Musculoskeletal System." Tr. 35. Specifically, plaintiff's
"degenerative disc disease of the lumbar spine was evaluated
under the Musculoskeletal listings with particular focus on
listing 1.04." Tr. 35. The ALJ determined that plaintiff's
condition did not meet the listing:

> The record does not demonstrate compromise of a nerve
> root (including the cauda equina) or the spinal cord
> with additional findings of: A) evidence of nerve root
> compression    characterized    by    neuro-anatomic
> distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness)
> accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg
> raising; or B) spinal arachnoiditis; or C) Lumbar spinal
> stenosis resulting in pseudoclaudication[.]

Tr. 35. The ALJ considered the effects of plaintiff's Level 1

obesity "when evaluating the claimant's other impairments under

the listings[,]" but found that "even with this consideration,

no listing is met." Tr. 36.

Before moving on to step four, the ALJ found that plaintiff

had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except he can occasionally lift and carry
> 20 pounds; frequently lift and carry 10 pounds; stand
> and walk for 6 hours in an 8-hour day; sit for 6 hours
> in an 8-hour day; occasionally climb ramps and stairs;
> never climb ladders, ropes, or scaffolds; occasionally
> balance, stoop, kneel, crouch, and crawl; and must be
> able to change positions between sitting and standing
> every 30 minutes.

Tr. 36.

At step four, the ALJ determined that plaintiff "is unable

to perform any past relevant work[.]" Tr. 40.

At step five, the ALJ found that "[c]onsidering the

claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform[.]" Tr. 40.

## V.   <u>DISCUSSION</u>

Plaintiff moves to reverse the decision of the Commissioner or for a remand for further proceedings. <u>See</u> Doc. #23. Plaintiff makes the following arguments:

- The ALJ failed to properly evaluate the medical opinion evidence. <u>See</u> Doc. #23-1 at 1-9.

- The ALJ failed to properly consider plaintiff's physical therapy records. <u>See</u> <u>id.</u> at 9-14.

- The RFC was flawed because it did not account for all of plaintiff's limitations. <u>See</u> <u>id.</u> at 14-18.

- The ALJ erred in making credibility determinations about plaintiff's pain. <u>See</u> <u>id.</u> at 18-22.

### A.   <u>Evaluation of the Opinion Evidence</u>

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence. Specifically, plaintiff contends that "[t]he ALJ rejected the opinion of the treating neurosurgeon, Dr. Onyiuke, in favor of the opinion of an nonexamining agency physician and Dr. Krompinger, an independent medical examiner[.]" <u>Id.</u> at 2 (sic). Defendant responds that "the ALJ appropriately considered the medical opinion evidence[.]" Doc. #35-1 at 10.

### 1.   Dr. Onyiuke

Plaintiff first argues that the ALJ erred by failing to apply the treating physician rule to Dr. Onyiuke's medical source statement ("the MSS"). See Doc. #23-1 at 2-5. The treating physician rule provides that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation and quotation marks omitted). Under this rule, "an ALJ has a non-delegable duty to explain to a plaintiff the 'good reasons' why the ALJ is discounting a treating physician's opinion." Leroy v. Colvin, 84 F. Supp. 3d 124, 134 (D. Conn. 2015). "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Burgess, 537 F.3d at 129-30 (citation and quotation marks omitted).

Plaintiff contends that the ALJ erred by according the MSS, which Dr. Onyiuke completed on January 26, 2019, little weight.[3]

---

[3] Plaintiff also appears to argue that because "Dr. Onyiuke ordered the physical therapy and reviewed and signed the progress note summaries[,]" plaintiff's physical therapy records are entitled to treating physician deference. Doc. #23-1 at 6. The Court addresses that argument in Section V.B.

The MSS is largely a check-box form. See Tr. 1142-45. As will be discussed in greater detail, aspects of the MSS are internally inconsistent; however, overall, the MSS indicates that plaintiff's ability to work is extremely limited by his impairments. See Tr. 1142-45. Plaintiff argues that the ALJ "did not adequately consider the factors that are required for consideration" under the treating physician rule.[4] See Doc. #23-1 at 22. He also asserts that, in giving Dr. Onyiuke's opinion little weight, the ALJ "disregarded and abundance of objective and clinical medical evidence supporting Dr. Onyiuke's opinion[.]" Id. at 6 (sic). Defendant responds that "[t]he ALJ appropriately weighed [the MSS] and gave good reasons for affording it little weight[.]" Doc. #35-1 at 14.

Dr. Onyiuke is a medical doctor at UConn Health. See, e.g., Tr. 422. As an initial matter, the Court agrees that Dr. Onyiuke was plaintiff's "treating physician."[5] A treating physician is one who has provided a plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment

---

[4] As previously noted, see supra, p. 5-6, the law regarding evaluation of treating physician opinions has recently changed; however, the Court applies the regulations in effect at the time the application was filed.

[5] Defendant's position as to whether Dr. Onyiuke was plaintiff's treating physician is unclear. Defendant states only: "The ALJ acknowledged that Dr. Onyiuke treated Plaintiff and was an acceptable medical source[.]" Doc. #35-1 at 13.

relationship with" that plaintiff. 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2). Dr. Onyiuke first treated plaintiff on December 1, 2016.[6] See Tr. 503-04. He saw plaintiff again on January 19, 2017, see Tr. 879-80, and performed plaintiff's back surgery on March 13, 2017. See Tr. 784-90. Dr. Onyiuke then saw plaintiff for six follow-up visits in the fifteen months following the surgery. See Tr. 814-17 (treatment notes from April 18, 2017, visit); Tr. 921-23 (treatment notes from June 29, 2017, visit); Tr. 918-20 (treatment notes from August 17, 2017, visit); Tr. 1152-54 (treatment notes from January 26, 2018, visit); Tr. 1165-67 (treatment notes from April 5, 2018, visit); Tr. 1389-94 (treatment notes from June 21, 2018, visit). Dr. Onyiuke regularly treated plaintiff, and he performed plaintiff's March 13, 2017, surgery. Therefore, the Court finds that Dr. Onyiuke had an "ongoing treatment relationship with" plaintiff so as to be considered his treating physician. §§404.1527(a)(2),

---

[6] Plaintiff's Statement of Material Facts suggests that Dr. Onyiuke treated plaintiff as early as June, 2016, stating: "On June 22, 2016, Dr. Onyiuke recommended biweekly PT." Doc. #23-2 at 3. To support this assertion, plaintiff cites to a "General Evaluation – PT" form from "Access Rehab Centers[.]" Tr. 782-83. The record provides no indication that this form was completed by Dr. Onyiuke. The treatment provider listed on the form is "A. [illegible], APRN[.]" Tr. 782. Moreover, the treatment notes from plaintiff's September 27, 2016, visit to UConn Health make no mention of Dr. Onyiuke, but rather indicate that plaintiff "is a new patient referred here by his primary care physician." Tr. 1392.

416.927(a)(2); see also Petrie v. Astrue, 412 F. App'x 401, 405
(2d Cir. 2011) ("[T]he opinion of a treating physician is given
extra weight because of his unique position resulting from the
continuity of treatment he provides and the doctor/patient
relationship he develops.").

Plaintiff's arguments regarding the ALJ's application of
the treating physician rule are somewhat difficult to parse.
Plaintiff appears to assert, primarily, that the ALJ's decision
to accord the MSS little weight was not supported by substantial
evidence because "[t]he ALJ disregarded and abundance of
objective and clinical medical evidence supporting Dr. Onyiuke's
opinion, as well as the consistency of the Plaintiff's
complaints with the evidence." Doc. #23-1 at 6 (sic). Then, in
the conclusion of his brief, plaintiff contends, for the first
time, that "[t]he Defendant did not adequately consider the
factors that are required for consideration in 20 C.F.R.
§404.1527(c)(2)." Id. at 22. Plaintiff asserts:

> First, there was no discussion or consideration of the
> frequency, length, nature, and extent of Dr. Onyiuke's
> treatment, any mention of the bulk of findings of the
> physical therapists, or the Community Health Center
> records. There was no discussion or consideration of the
> sheer volume of medical evidence supporting the opinion.
> Because the Defendant's decision is silent as the bulk
> of physical therapy findings and Community Health
> records, there is no possible consideration of the
> consistency of the Dr. Onyiuke's opinion with the
> remaining medical evidence. There was no explicit
> consideration of Dr. Onyiuke's specialty.

15

Id. at 22-23 (sic).

"[E]ven when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." Burgess, 537 F.3d at 129. Specifically, the regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6). Once the ALJ has considered these factors, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." Burgess, 537 F.3d at 129 (citation and quotation marks omitted).

"The Second Circuit does not require a slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013). Indeed, the "ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." Davenport v. Saul, No. 3:18CV01641(VAB), 2020 WL 1532334, at *30 (D. Conn. Mar. 31, 2020) (citation and quotation marks omitted)); see also Martinez v. Saul, No.

16

3:19CV01017(TOF), 2020 WL 6440950, at *11 (D. Conn. Nov. 3, 2020) ("[F]ailure to consider the Burgess factors may be excused if the record otherwise provides good reasons for the weight that the ALJ assigned to the treating physician's opinion." (citation and quotation marks omitted)); Guerra v. Saul, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the Burgess factors when assigning the treating physician[s'] opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient 'good reasons' for the weight assigned.").

Here, the ALJ adequately considered the Burgess factors and "comprehensively set forth his reasons for" assigning the MSS little weight. Burgess, 537 F.3d at 129 (citation and quotation marks omitted). The ALJ cited to plaintiff's treatment notes dating from April 18, 2017, through September 20, 2018, indicating that the ALJ considered the length and nature of the treatment relationship, and the frequency of examination. See Tr. 39 (citing to Exhibits 19F, 28F, 29F, 31F, and 32F). The ALJ also cited to records that reference Dr. Onyiuke's specialty, neurosurgery, demonstrating that the ALJ considered Dr. Onyiuke's expertise and specialized knowledge. See, e.g., Tr. 39 (citing to Tr. 1145, which lists Dr. Onyiuke's address as "UConn Neurosurgery").

The ALJ explicitly addressed the two remaining Burgess factors: the consistency of the opinion with the entire record and the relevant evidence used to support the opinion. The ALJ found that Dr. Onyiuke's opinion "that the claimant does not require an assistive device is consistent with the record," but that otherwise the MSS was "generally overly restrictive and inconsistent with the record." Tr. 39. The ALJ also noted that the MSS was inconsistent with Dr. Onyiuke's own treatment notes and not supported by the other medical evidence in the record:

> Dr. Onyiuke's own treatment notes from January 2018 show that the claimant had only paravertebral muscle spasm and tenderness (Exhibit 28F). He otherwise had intact hardware and was treated conservatively with a lidocaine patch (Id.). While other examination notes from 2018 show some reduced lumbar range of motion and loosening of screw in the claimant's spine, they do not show findings that are consistent with Dr. Onyiuke's more significant limitations (Exhibit 32F; 33F). Rather, a more up-to-date examination shows that the claimant can lift up to 20 pounds (Exhibit 33F).

Tr. 39. The ALJ also stated that Dr. Onyiuke failed to "provide an explanation for the[] significant limitations" included in the MSS, "and only explained that the claimant had low back pain and muscle spasm." Tr. 39. For these reasons, the ALJ determined that "Dr. Onyiuke's opinions are ... overly restrictive and given little weight." Tr. 39.

Thus, while the ALJ did not "explicitly walk through" each of the factors set forth in Burgess, a careful read of the ALJ's decision makes clear that he adequately considered them, and

"applied the substance of the treating physician rule[]" to Dr. Onyiuke's opinion. Davenport, 2020 WL 1532334, at *30 (citation and quotation marks omitted). Accordingly, the Court finds no error in the ALJ's application of the treating physician rule because "the ALJ's reasoning and adherence to the regulation are clear." Atwater, 512 F. App'x at 70.

Moreover, "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed[]" here. Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (citation and quotation marks omitted). Upon review of the entire record, the Court finds that the MSS is internally inconsistent, and unsupported by both Dr. Onyiuke's own treatment notes and the record as a whole. Therefore, plaintiff's contention that the ALJ erred by according Dr. Onyiuke's opinion little weight is without merit because the record "provides good reasons for the weight that the ALJ assigned to" the MSS. Martinez, 2020 WL 6440950, at *11 (citation and quotation marks omitted).

First, the MSS is internally inconsistent and, frankly, difficult to understand.[7] "A physician's opinions are given less weight when his opinions are internally inconsistent." Micheli

---

[7] The Court notes that the hand-written MSS is also, in certain places, illegible. The Court has done its best to accurately read and interpret the MSS.

v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012). For example, Dr. Onyiuke states that plaintiff's prognosis is "fair" and that his only symptoms are "LBP" (presumably, lower back pain) and "muscle spasm." Tr. 1142. Yet, the MSS suggests that plaintiff is severely restricted in his ability to work: Dr. Onyiuke checked boxes indicating that plaintiff will be "*off task*" for "25% or more" of a typical workday, and "is likely to be absent from work as a result of [his] impairments or treatment[]" on "[m]ore than four days per month[.]" Tr. 1145. However, and as noted by the ALJ, see Tr. 39, Dr. Onyiuke provided no explanation as to how or why plaintiff's condition limits his ability to work so severely. See Tr. 1142-45.

In addition, where the form asks the medical provider to "circle the hours and/or minutes that your patient can sit *at one time*, *e.g.*, before needing to get up," Dr. Onyiuke circled both 30 minutes and 2 hours. Tr. 1143. The Court understands this to indicate that it is Dr. Onyiuke's opinion that plaintiff can sit for a total of two hours and thirty minutes "before needing to get up[.]" Tr. 1143. But where the form asks the provider to "indicate how long your patient can sit ... *total in an 8-hour working day*[,]" Dr. Onyiuke checked the box for "about 2 hours[.]" Tr. 1143. These two opinions are inconsistent because they suggest that while plaintiff is able sit for longer than two hours at one time without needing to get up, he can

20

only sit for "about" two hours <u>total</u> in an eight-hour day. Tr.
1143. Similarly, where the form asks the provider to "circle the
hours and/or minutes that your patient can stand *at one time*,
*e.g.*, before needing to sit down, walk around, etc.[,]" Dr.
Onyiuke circled both 20 minutes and 2 hours. Tr. 1143. The Court
understands this to indicate that it is Dr. Onyiuke's opinion
that plaintiff can stand for a total of two hours <u>and</u> twenty
minutes "before needing to sit down, walk around, etc." Tr.
1143. However, Dr. Onyiuke then checked a box indicating that
plaintiff can "stand/walk" for "less than 2 hours" a day. Tr.
1143. Again, it is inconsistent to suggest that plaintiff can
stand for <u>longer than</u> two hours at one time without needing to
sit or walk, but can only "stand/walk" for a total of <u>less</u> than
two hours in an 8-hour workday. Tr. 1143. Further, Dr. Onyiuke
indicated that plaintiff must walk for a duration of five
minutes, every five minutes. <u>See</u> Tr. 1143. However, when asked
whether, "[i]n addition to normal breaks every two hours,"
plaintiff will "sometimes need to take *unscheduled* breaks during
a working day[,]" Dr. Onyiuke wrote that such breaks would only
be necessary "1-2x" per day. Tr. 1143. It is impossible to
reconcile Dr. Onyiuke's suggestion that plaintiff needs to walk
every five minutes, for five minutes, with his statement that
plaintiff will only require unscheduled breaks once or twice per
day. <u>See</u> Tr. 1143. For these reasons, the MSS is internally

inconsistent. "When a treating physician's opinion is internally inconsistent ... the ALJ may give the treating physician's opinion less weight." Illenberg v. Colvin, No. 13CV09016(AT)(SN), 2014 WL 6969550, at *20 (S.D.N.Y. Dec. 9, 2014).

Second, the limitations set forth in the MSS are unsupported by Dr. Onyiuke's own treatment notes. As noted, Dr. Onyiuke examined plaintiff once in 2016, see Tr. 503-04; treated him once in January, 2017, see Tr. 879-80; performed back surgery on him in March, 2017, see Tr. 784-90; and saw him for follow-up visits every few months during the fifteen months following the surgery. See Tr. 814-17, 918-20, 921-23, 1152-54, 1165-67, 1389-94. The treatment notes predating plaintiff's surgery indicate that plaintiff was in pain, suffered from lumbar stenosis, and needed surgery. See Tr. 503-04, 879-80. After the surgery, the treatment notes largely indicate improvement and that plaintiff was healing as expected. See Tr. 814 (April 18, 2017, treatment note: plaintiff "is doing fairly well[]"); Tr. 921-23 (June 29, 2017, treatment note: plaintiff "was having some residual pain and muscle spasm particularly with prolonged standing and sitting[,]" "plaintiff was reassured, he is actually improving"); Tr. 918 (August 17, 2017, treatment note: plaintiff was doing "well up until recently when he accidentally tripped and fell outside"); Tr. 1152 (January

26, 2018, treatment note: plaintiff "reports some back pain due to bending over a week prior[]"); Tr. 1165 (April 5, 2018, treatment note: plaintiff "reports daily ongoing pain that is aggravated with certain sitting and lying positions[,]" but plaintiff "has had improvement in his pain from before his surgery[]"); Tr. 1389 (June 21, 2018 treatment note: plaintiff "reports that he is better with pain but still has residual pain[]"). To treat plaintiff's symptoms, Dr. Onyiuke prescribed him medication and referred him to physical therapy. See, e.g., Tr. 919, 922-23, 1153.

On the whole, Dr. Onyiuke's treatment notes indicate that plaintiff was diagnosed with lumbar stenosis and experienced back pain, but that plaintiff's condition improved and that he was not as impaired as the MSS suggests. See Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019) (finding that the ALJ provided good reasons for giving the opinions of the treating physicians "less weight" where the opinions "were inconsistent with the moderate findings reflected in the doctors' notes[]").

Third, the limitations in the MSS are inconsistent with the record as a whole. For example, Dr. Onyiuke checked boxes indicating that plaintiff can "stand/walk" for a total of "less than 2 hours" and sit for a total of "about 2 hours" in an 8-hour workday. Tr. 1143. However, Dr. Kuslis and Dr. Williams

each opined that plaintiff could "stand and/or walk" for
"[a]bout 6 hours in an 8-hour workday" and sit for "[a]bout 6
hours in an 8-hour workday[.]" Tr. 80, 107. Moreover, plaintiff
testified that standing and walking often helped alleviate his
pain, see Tr. 63, 68-69, and that he spends his time "walk[ing]
around the little park and things like that." Tr. 65. In
addition, the record contains a questionnaire completed by
plaintiff on October 9, 2017, as part of his physical therapy
treatment ("the October 2017 Questionnaire"). See Tr. 1386. The
October 2017 Questionnaire states that it is "designed to give
your therapist information as to how your back pain has affected
your ability to manage in every day life." Tr. 1386. It asks
plaintiff to mark the box next to the statement "which most
closely describes your current condition." Tr. 1386. On the
October 2017 Questionnaire, plaintiff checked boxes indicating
that he "can sit in any chair as long as I like[,]" and "can
stand as long as I want without increased pain." Tr. 1386.

Dr. Onyiuke also checked boxes on the MSS indicating that
plaintiff can occasionally lift and carry less than ten pounds,
can rarely lift and carry twenty pounds, and can never lift and
carry fifty pounds. See Tr. 1144. However, Dr. Kuslis opined
that plaintiff can occasionally lift and/or carry fifty pounds
and frequently lift and/or carry twenty-five pounds, see Tr. 80;
Dr. Williams opined that plaintiff can occasionally lift and/or

24

carry twenty-five pounds and frequently lift and/or carry ten pounds, see Tr. 107; and Dr. Krompinger opined only that plaintiff cannot lift more than twenty pounds. See Tr. 1410. Nothing in plaintiff's testimony at the administrative hearing indicates that his lifting capabilities would be as restricted as the MSS suggests. See Tr. 59-69. Indeed, on the October 2017 Questionnaire plaintiff checked the box next to the statement: "I can lift heavy weights without increased pain." Tr. 1386.

Treatment notes from plaintiff's visits to the Community Health Center ("CHC") also suggest that plaintiff is not as impaired as the MSS indicates. For example, a treatment note from May 12, 2017, describes plaintiff's general appearance as "well nourished, comfortable, no apparent distress, active, well developed." Tr. 1042; see also Tr. 1044 (June 12, 2017, treatment note indicating the same). Indeed, on two of his visits to CHC during the relevant time period plaintiff did not mention back pain at all. See Tr. 531 (November 1, 2016, treatment note: plaintiff "present[ed] with cough for two months"); Tr. 1046 (September 5, 2017, treatment note: plaintiff was treated for "dizzy spells"); see also Tr. 1048 (September 8, 2017, treatment note from plaintiff's follow-up visit for

vertigo: noting plaintiff "[h]ad back surgery last year[,] follows with PT, has some relief").[8]

Further, the extreme limitations in the MSS are inconsistent with plaintiff's own testimony and statements regarding his condition and activities. See Tr. 1145. For example, on the October 2017 Questionnaire, plaintiff indicated that his "pain is bad but I can manage without having to take pain medication." Tr. 1386. He also checked boxes next to the statements: "I can take care of myself normally without causing increased pain[]" and "[m]y social life is normal and does not increase my pain." Tr. 1386. While plaintiff testified at the administrative hearing that he is in pain from the moment he gets up in the morning, see Tr. 62, he also stated that he drives "three to four times[]" per week, Tr. 56, that his sleep is not affected by his condition, see Tr. 62, and that keeping active helps him manage his pain. See Tr. 63. He further asserted that his condition had improved and that his back pain

---

[8] The Court notes that during some of plaintiff's visits to CHC he reported back pain, and was prescribed opioid medication to treat his pain. See, e.g., Tr. 526 (August 2, 2016, treatment note); Tr. 533 (December 22, 2016, treatment note), Tr. 1039 (April 14, 2017, treatment note). However, plaintiff's providers at CHC stopped prescribing plaintiff opioid medication for his back because "his urine has been positive for benzodiazepines and cocaine two times in his history of opioid use." Tr. 1042 (May 12, 2017, treatment note); see also Tr. 1044 (June 12, 2017, treatment note: "I have informed [plaintiff] I will not prescribe any opioids at this time.").

no longer "radiates down [his] leg[.]" Tr. 59. Plaintiff also testified that he is able to travel to visit his daughter, see Tr. 65-66, and that he "see[s] a couple of friends and stuff like that and go[es] to their house, we play cards and stuff." Tr. 66. Therefore, the limitations regarding plaintiff's ability to work set forth in the MSS are inconsistent with plaintiff's own testimony. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014) (finding "substantial evidence for giving the" opinion of plaintiff's treating physician "only probative weight," where the opinion "was inconsistent with ... [plaintiff's] testimony regarding her daily functioning[]").

For these reasons, "substantial evidence in the record demonstrates that [Dr. Onyiuke's] opinion is inconsistent with the record," and the ALJ did "not err by refusing to accord the [MSS] significant weight." Torres v. Berryhill, No. 3:18CV01485(RAR), 2020 WL 38939, at *4 (D. Conn. Jan. 3, 2020); see also Krupczyk v. Comm'r of Soc. Sec., 342 F. Supp. 3d 352, 360 (W.D.N.Y. 2018) ("[A]n ALJ may disregard the opinion of a treating physician if it is ... inconsistent with the record as a whole.").

In sum, the Court finds that the ALJ did not err by according the MSS little weight because he "provided sufficient 'good reasons' for the weight assigned[,]" and those reasons are

supported by the record. <u>Guerra</u>, 778 F. App'x at 77.
Accordingly, remand is not warranted on this basis.

      *2.   Dr. Williams*

     Plaintiff argues that the ALJ erred by assigning greater
weight to the opinion of Dr. Williams than to that of Dr.
Onyiuke. <u>See</u> Doc. #23-1 at 6. Plaintiff contends: "Dr. Onyiuke's
knowledge and opinion of the Plaintiff is entitled to greater
weight that of Dr. Williams, the state agency consultant who
never examined the Plaintiff and did not review subsequent
records showing that surgery failed." <u>Id.</u> (sic).

     Dr. Williams is a state agency physician who reviewed
plaintiff's medical records. <u>See</u> Tr. 98-123. The ALJ accorded
Dr. Williams' opinion "partial weight[,]" noting that while Dr.
Williams "had the opportunity to examine the claimant's
record[,]" he did not "have the benefit of additional evidence
submitted at the hearing level[.]"[9] Tr. 38. Although the ALJ gave
Dr. Williams' opinion only partial weight, he stated that "the
opinion of Dr. Williams is the most supported and consistent
with the record as a whole." Tr. 38.

     Plaintiff's sole argument regarding Dr. Williams' opinion
is that the opinion is not entitled to more weight than Dr.

---

[9] Plaintiff makes no argument regarding the opinion of state
agency consultant Dr. Jeanne Kuslis, which the ALJ also accorded
partial weight. <u>See</u> Tr. 38.

Onyiuke's because Dr. Williams did not review any medical
records dated after September 5, 2017. See Doc. #23-1 at 6.
Therefore, plaintiff contends, "Dr. Williams did not know that
the surgery was a catastrophic failure." Id.

However, Dr. Williams' opinion indicates that he reviewed
at least three records dated after September 5, 2017. See Tr.
104-05, 117-18. Dr. Williams reviewed treatment notes from
plaintiff's September 8, 2017, visit to CHC; plaintiff's October
6, 2017, visit to Cardio Associates; and plaintiff's January 26,
2018, visit with Dr. Onyiuke. See Tr. 105, 118. The treatment
note from plaintiff's September 8, 2017, visit to CHC states
that plaintiff "[h]ad back surgery last year[,] follows with PT,
has some relief." Tr. 1048. It also indicates that plaintiff and
the provider "[d]iscussed conservative strategies" to treat his
back pain, "including weight loss, smoking cessation, increased
exercise." Tr. 1048. Significantly, the notes from plaintiff's
January 26, 2018, visit with Dr. Onyiuke specifically discuss
plaintiff's back condition and his post-surgical recovery. See
Tr. 1152-54 (noting, for example, that plaintiff's "x-rays also
suggest some evidence of perisprosthetic halo formation
(osteolysis) ... [t]he patient complains of residual low back
pain and on physical examination demonstrates paravertebral
muscle spasm[]"). Therefore, plaintiff's argument that the ALJ
erred by giving Dr. Williams' opinion partial weight because he

"did not know that the surgery was a catastrophic failure[,]" Doc. #23-1 at 6, is unpersuasive because Dr. Williams did review evidence regarding plaintiff's recovery from his surgery.

Moreover, "the opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record." Tyson v. Astrue, No. 3:09CV01736(CSH)(JGM), 2010 WL 4365577, at *10 (D. Conn. June 15, 2010), report and recommendation adopted, 2010 WL 4340672 (D. Conn. Oct. 22, 2010); see also Lumpkin v. Saul, No. 3:19CV01159(WIG), 2020 WL 897305, at *6 (D. Conn. Feb. 25, 2020) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation[,] and these opinions may constitute substantial evidence[.]"). Plaintiff asserts that "if the ALJ concludes that the opinion of a non-examining source is entitled to greater weight than the opinion of a treating physician," he must "set forth good reasons for not crediting the opinion of the treating physician." Doc. #23-1 at 7 (citation and quotation marks omitted). As discussed, the ALJ did set forth good reasons for assigning Dr. Onyiuke's opinion little weight. See Tr. 39. In addition, the ALJ articulated his reasons for assigning Dr. Williams' opinion partial weight. See Tr. 38. He determined that Dr. Williams' explanation of plaintiff's condition was "consistent with the longitudinal

30

record and updated evidence[,]" and concluded that his opinion
was "the most supported and consistent with the record as a
whole." Tr. 38.

Accordingly, the ALJ did not err with respect to Dr.
Williams' opinion.

> ### 3.   *Dr. Krompinger*

Plaintiff also argues that the ALJ erred by according the
opinion of Dr. Krompinger great weight. See Doc. #23-1 at 7-9.
Specifically, plaintiff contends that Dr. Krompinger's opinion
"was given inappropriate weight in the context of an independent
one-time examination for the Workers' Compensation Commission."
Id. at 7.

Dr. Krompinger conducted an Independent Medical Evaluation
of plaintiff on November 1, 2018. See Tr. 1409-10. The report of
that examination describes plaintiff's medical history and
indicates that Dr. Krompinger reviewed plaintiff's x-rays, MRIs,
and postoperative films, as well as a CT myelogram and a CAT
scan. See Tr. 1409-10. Dr. Krompinger conducted a physical
examination, finding:

> Spinal mechanics show approximately 10 degrees of
> extension and 30 degrees of forward flexibility. He has
> trace knee reflexes and bilaterally absent ankle
> reflexes. Straight leg raising is accomplished to 60
> degrees with predominant limitation secondary to
> hamstring tightness. Hip mechanics are unremarkable.

Tr. 1410. Dr. Krompinger opined that plaintiff's "diagnostic studies are highly indicative of a pseudarthrosis with loosening of the spinal hardware. His subjective complaints do correlate to the objective findings." Tr. 1410. He further remarked that he "believe[d] the gentleman requires revision of the spinal construct." Tr. 1410. Regarding plaintiff's functional limitations, Dr. Krompinger determined: "The patient presently would be capable of only light duty work with no repetitive bending and no lifting over 20 pounds." Tr. 1410.

The ALJ accorded Dr. Krompinger's opinion great weight, finding that Dr. Krompinger "is an acceptable medical source who had the opportunity to perform an independent review of the claimant's medical history and examination of the claimant." Tr. 39. The ALJ concluded that Dr. Krompinger's

> opinion is supported by his examination, which shows a review of the claimant's medical history and updated imaging reports. It is consistent with findings of reduced lumbar motion, absent ankle reflexes, straight leg raising to 60 degrees, and unremarkable hip mechanics. His opinion is consistent with the record as a whole, including the opinions of Dr. Williams. It is consistent with findings of intact neurological functioning, limping gait without an assistive device, the claimant's performance of household chores, and that he does not require the use of pain medication[.]

Tr. 39.

Plaintiff argues that Dr. Krompinger's opinion should not have been given great weight because it was made in the context of a workers' compensation claim. See Doc. #23-1 at 7-9.

32

Plaintiff's arguments on this issue are a bit confusing. Plaintiff appears to argue that because "[t]here is no indication by Dr. Krompinger of exactly when [plaintiff's] light duty capacity began[,]" his "generalized, vague guess at current light duty status simply does <u>not</u> rule out disability for 12 months given an onset date of June 2016." <u>Id.</u> at 8. He also contends that Dr. Krompinger's "opinion that the Plaintiff had the ability to perform 'light work'" was "unclear" because "pain is excluded" in workers' compensation claims and "determining the worker's [RFC] was not the main purpose of the" examination. <u>Id.</u> at 8-9.

The Court agrees with the general proposition that different standards apply to workers' compensation claims and claims for disability under the Social Security Act. As such, "[d]isability determinations by other entities are not binding on the Commissioner." 20 C.F.R. §§404.1504, 416.904. However,

> [t]hese decisions, <u>and the evidence used to make these decisions</u>, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules. [The Social Security Administration] will evaluate the opinion evidence from medical sources ... used by other agencies, that are in our case record, in accordance with [our practices].

SSR 06-03p, 2006 WL 2263437 (S.S.A. Aug. 9, 2006) (emphasis added). Thus, "[w]hile an assessment of disability for workers' compensation is not entitled to controlling weight, it cannot be

ignored[.]" Mercado v. Colvin, No. 15CV02283(JCF), 2016 WL 3866587, at *15 (S.D.N.Y. July 13, 2016) (citations and quotation marks omitted). Indeed, "the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

Here, the ALJ evaluated Dr. Krompinger's opinion "just as he ... would evaluate any other medical opinion." Id.; see also Poole v. Saul, 462 F. Supp. 3d 137, 150 (D. Conn. 2020) ("When weighing any medical opinion, ... the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record[.]"). The ALJ considered the "length of treatment relationship; frequency of examination; [and] nature and extent of the treatment relationship[]" between plaintiff and Dr. Krompinger, Poole, 462 F. Supp. 3d at 150, noting that Dr. Krompinger "performed an Employer Respondent's Examination" of plaintiff and reviewed plaintiff's medical history. Tr. 39. The ALJ discussed "the relevant evidence used to support the opinion[,]" Poole, 462 F. Supp. 3d at 150, including the results of the physical examination. See Tr. 39. The ALJ further considered the "consistency of the opinion with the entire record[,]" Poole,

462 F. Supp. 3d at 150, concluding that Dr. Krompinger's opinion was "consistent with the record as a whole[.]" Tr. 39. Thus, the ALJ appropriately evaluated Dr. Krompinger's opinion, and did not err by giving it great weight.

Moreover, the ALJ's determination that plaintiff was capable of performing at least light work, with additional restrictions, is supported not only by Dr. Krompinger's opinion, but also by substantial evidence elsewhere in the record. See, e.g., Tr. 80-83 (opinion of Dr. Jeanne Kuslis, concluding that plaintiff could perform medium exertional work); Tr. 106-09 (opinion of Dr. Donald Williams, determining that plaintiff could perform light exertional work); Tr. 814 (treatment note from UConn Health one month after plaintiff's surgery, indicating that plaintiff "is doing fairly well[]"); Tr. 1042, 1044 (treatment notes from two visits plaintiff made to CHC in 2017, each describing plaintiff's general appearance as "well nourished, comfortable, no apparent distress, active, well developed[]"); Tr. 1386 (October 2017 Questionnaire completed by plaintiff asserting that he can sit and stand for as long as he wants without increased pain and "can lift heavy weights without increased pain[]"). Therefore, plaintiff has failed to articulate how according Dr. Krompinger's opinion -- which was consistent with, if not more restrictive than, other evidence in the record -- great weight constituted reversible error.

35

In sum, the ALJ did not err in his evaluation of the medical opinion evidence.

B.   The Physical Therapy Records

Plaintiff argues that the ALJ erred in his evaluation of plaintiff's physical therapy records ("the PT Records"). See Doc. #23-1 at 9-14. First, plaintiff appears to contend that because Dr. Onyiuke referred plaintiff for physical therapy, and some of the PT Records are signed by Dr. Onyiuke, all of plaintiff's PT Records should have been considered treating physician evidence. See id. at 9-13. Second, plaintiff asserts that even if the PT Records were not entitled to treating physician deference, the ALJ erroneously "ignored" this evidence.[10] Id. at 11. The Court will address each of these arguments in turn.

1.   The Physical Therapy Records Are Not Entitled to Treating Physician Deference

Plaintiff seems to argue because some of plaintiff's PT Records are signed by Dr. Onyiuke, all of the PT Records should be treated as the opinion of plaintiff's treating physician. See Doc. #23-1 at 6, 11-13. Plaintiff's argument on this point is

---

[10] While plaintiff conclusorily states that "[t]he vast bulk of this objective contemporaneous evidence in the record is ignored by the ALJ or the Appeals Council[,]" Doc. #23-1 at 11, plaintiff did not develop this argument with respect to the Appeals Council. Accordingly, the Court declines to address the Appeals Council's treatment of the PT Records.

not particularly well-developed. He contends that the ALJ erred because the ALJ's decision does not mention the PT Records, "or the detailed and objective evidence they contain, or the fact that a <u>treating provider, Dr. Onyiuke, signed the records</u>." <u>Id.</u> at 12. He also writes:

> Dr. Onyiuke ordered the physical therapy and reviewed and signed the progress note summaries. The physician's signature is significant. When records of treatment are ordered, reviewed and <u>signed by a physician</u> or an assistant from his office, there is good reason to consider such records to be medical records.

<u>Id.</u> at 6.

As discussed, the opinion of a plaintiff's treating physician is entitled to particular deference. <u>See</u> 20 C.F.R. §§404.1527(c)(2), 416.927(a)(2); <u>see also</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004). However, the treating physician rule only applies to the <u>opinions</u> of plaintiff's <u>treating physicians</u>. The Court has concluded that Dr. Onyiuke was plaintiff's treating physician. The question, then, is whether the PT Records constitute Dr. Onyiuke's opinion, such that they should have been accorded deference under the treating physician rule.

Plaintiff cites to five pages of the record to support his assertion that Dr. Onyiuke signed some of the PT Records, and therefore that <u>all</u> of the PT Records constitute Dr. Onyiuke's opinion. <u>See</u> Doc. #23-1 at 12. The pages cited, Tr. 630-34,

contain records from plaintiff's May 28, 2016, visit to St.
Mary's hospital; they are completely unrelated to either Dr.
Onyiuke or plaintiff's physical therapy. See Tr. 630-34. The
record does contain four progress notes, see Tr. 1259-61, 1316,
one "General Evaluation" form, Tr. 1256-57, and one discharge
note, see Tr. 1264, that are signed by plaintiff's physical
therapist and by Dr. Onyiuke. Plaintiff has provided no legal or
factual basis to support the argument that because these six
records, out of the more than one hundred fifty PT Records,[11] are
co-signed by Dr. Onyiuke, all of the PT Records constitute his
opinion. Therefore, the Court will consider only whether the six
records co-signed by Dr. Onyiuke are entitled to treating
physician deference.

The Court finds that they are not. Where an opinion is
authored by a non-physician provider and only co-signed by a
physician, "but there are no records or other evidence to show
that the [physician] treated" the plaintiff, the opinion does
not constitute the opinion of that physician. Perez v. Colvin,
No. 3:13CV00868(JCH)(HBF), 2014 WL 4852836, at *26 (D. Conn.
Apr. 17, 2014), report and recommendation adopted, 2014 WL

---

[11] The PT Records contain approximately one hundred and seventy-
five treatment notes dating from June, 2016 through June, 2018.
See Tr. 707-83; 967-1032; 1168-1386. They also contain seven
"Aquatics Flowsheet[s]" and one "Exercise Flowsheet[,]" which
contain charts listing the exercises plaintiff performed during
a number of visits. Tr. 776-79; 969-71.

4852848 (D. Conn. Sept. 29, 2014). There is nothing in the record to suggest that Dr. Onyiuke personally oversaw or participated in plaintiff's extensive physical therapy, such that the six notes he co-signed would constitute his opinion.

As stated, the record contains approximately one hundred and seventy-five separate treatment notes from plaintiff's physical therapy sessions at Access Rehab Centers. See, e.g., Tr. 1168-1386. Of the six notes co-signed by Dr. Onyiuke, five summarize plaintiff's progress during physical therapy, assess plaintiff's prognosis, and make recommendations for continued treatment. See Tr. 1259-61, 1264, 1316. The sixth, a "General Evaluation" form, appears to be an intake evaluation from an appointment at which plaintiff was re-referred for physical therapy on April 18, 2017.[12] See Tr. 1256-57.

Each of these six documents is signed by a physical therapist and by Dr. Onyiuke. See Tr. 1256-57, 1259-61, 1264, 1316. However, each physical therapist's signature corresponds to the date the form was completed; each signature from Dr. Onyiuke is dated at least a few days after the physical therapist's signature. See Tr. 1256-57 (signed by therapist on April 24, 2017, and by Dr. Onyiuke on May 3, 2017); Tr. 1259

---

[12] The record contains three referrals for physical therapy from UConn Health, where Dr. Onyiuke is a physician, see Tr. 977-78, Tr. 1185, Tr. 1322, and one from "CHC of Waterbury Medical[.]" Tr. 1187.

(signed by therapist on July 28, 2017, and by Dr. Onyiuke on August 1, 2017); Tr. 1260 (signed by therapist on June 26, 2017, and by Dr. Onyiuke on June 27, 2017); Tr. 1261 (signed by therapist on May 24, 2017, and by Dr. Onyiuke on May 31, 2017); Tr. 1264 (signed by therapist on September 8, 2017, and by Dr. Onyiuke on September 14, 2017); Tr. 1316 (signed by therapist on April 12, 2018, and by Dr. Onyiuke on April 24, 2018).

Thus, although Dr. Onyiuke treated plaintiff at UConn Health in his capacity as plaintiff's neurosurgeon, the record does not suggest that he supervised or participated in plaintiff's physical therapy at Access Rehab Centers. Rather, it is clear from the record that Dr. Onyiuke referred plaintiff to physical therapy. Plaintiff regularly attended physical therapy sessions at Access Rehab Centers, and his physical therapists sent Dr. Onyiuke's office periodic evaluations, which Dr. Onyiuke sometimes then co-signed.[13] Plaintiff has set forth no basis for finding that Dr. Onyiuke's signature on any of these documents indicates that they constitute his opinion, and the record provides none. See Perez, 2014 WL 4852836, at *26. Accordingly, the six records co-signed by Dr. Onyiuke are not

---

[13] The record also contains progress notes from Access Rehab Centers that are signed not by Dr. Onyiuke, but by Lara Labarbera, a physician's assistant at UConn Health. See Tr. 1177-79, 1183, 1317-19, 1321.

Dr. Onyiuke's opinions, and the ALJ was not required to evaluate them under the treating physician rule.

2.    *The ALJ Properly Considered the Physical Therapy Records*

Plaintiff next contends that "[e]ven if the PT records are not deemed to be Dr. Onyiuke's records, as an opinion from an 'other source,' PT records are 'entitled to some weight.'" Doc. #23-1 at 13 (sic). Plaintiff asserts that the ALJ erroneously failed to consider the PT Records.[14] See id. at 12. Indeed, plaintiff alleges that "there is no indication that the [ALJ] was aware" of the "abundant objective evidence[]" in the PT Records. Id. at 14. Defendant responds that the ALJ did not err because he "explicitly discussed Plaintiff's physical therapy treatment" and "the ALJ was not required to discuss each specific physical therapy treatment note." Doc. #35-1 at 18.

The PT Records "are not opinions rendered in connection with the plaintiff's application for benefits, but rather,

---

[14] In this section, plaintiff makes a passing argument that the ALJ ignored plaintiff's medical records from CHC. See Doc. #23-1 at 13 ("Dr. Onyiuke's records, PT records and the records of the Community Health Center records are all consistent and yet, the ALJ makes almost no mention of the Community Health Center records or the PT records." (sic)); id. at 14 ("The failure to consider PT evidence Community Health Center evidence and the consistency of those records with Dr. O's opinion requires remand." (sic)). Plaintiff has not adequately developed this argument. Moreover, the ALJ did discuss plaintiff's records from CHC throughout his decision. See Tr. 35, 36, 37, 38, 39. The Court declines to address this argument further.

contemporaneous treatment records." Parsons v. Berryhill, No.
3:17CV01550(RMS), 2019 WL 1199392, at *9 (D. Conn. Mar. 14,
2019). Therefore, while the ALJ was not required to evaluate the
PT Records as "other source" medical opinion evidence, see Doc.
#23-1 at 13, the ALJ had an obligation to consider the
"objective medical evidence" contained within the PT Records. 20
C.F.R. §§404.1529(c)(2), 416.929(c)(2) (The Commissioner "will
consider [objective medical evidence] in reaching a conclusion
as to whether [plaintiff is] disabled."). "Objective medical
evidence is evidence obtained from the application of medically
acceptable clinical and laboratory diagnostic techniques, such
as evidence of reduced joint motion, muscle spasm, sensory
deficit or motor disruption." Id.

Despite plaintiff's assertions to the contrary, the ALJ did
consider the PT Records, and referred to them throughout his
ruling. For example, the ALJ cited plaintiff's PT Records when
discussing plaintiff's degenerative disc disease. See Tr. 35
(citing to Tr. 979, a "Discharge Note" from Access Rehab
Centers). The ALJ also referenced plaintiff's PT Records when
discussing plaintiff's ability to ambulate and to grocery shop.
See Tr. 37 (citing to Tr. 1019, May 17, 2017, treatment note);
Tr. 38 (citing to Tr. 989, August 3, 2017, treatment note). He
further relied on the PT Records in evaluating Dr. Onyiuke's
opinion. See Tr. 39 (citing to Tr. 979, September 8, 2017,

discharge note). Finally, the ALJ expressly observed that plaintiff "was referred to physical therapy[,]" and cited to over seventy pages of treatment notes spanning from June 22, 2016, to March 9, 2017. Tr. 37 (citing to Tr. 707-83).

Thus, plaintiff's argument that the ALJ "ignored" plaintiff's PT Records, or was somehow unaware of them, is without merit. Doc. #23-1 at 11, 14. If plaintiff contends that the ALJ erred because he did not discuss all of the PT Records, that argument also fails. It is well settled that "an ALJ is not required to discuss every piece of evidence submitted[,]" and an ALJ's "failure to cite specific evidence does not indicate that such evidence was not considered." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation marks omitted); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (An ALJ has no obligation to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Moreover, the Court has carefully reviewed the entire record, including plaintiff's PT Records, and does not find that a more exhaustive consideration of the PT Records by the ALJ would have been likely to alter the ALJ's decision. Plaintiff attended physical therapy at Access Rehab Centers twice per week from June, 2016, through June, 2018. The treatment notes from

each physical therapy session contain four elements: (1) plaintiff's self-reports about his condition and pain on that day, (2) what the plaintiff did during the session, either in narrative or checkbox form, (3) brief comments on how plaintiff responded to treatment that day, and (4) a recommendation for plaintiff's continued treatment. Thus, the PT records provide insight into plaintiff's self-assessment of his pain. See, e.g., Tr. 1196 ("Ok – better than yesterday"); Tr. 1198 ("Not my worst day"); Tr. 1199 ("Awful today"); Tr. 1201 ("Not as bad as the other days"); Tr. 1207 ("Not real bad today"); Tr. 1214 ("Still sore but better than the other day"). They also report what plaintiff was able to do during his physical therapy sessions. See, e.g., Tr. 1217 (indicating plaintiff completed "aquatic therapy x 15 min"), Tr. 1239 ("Resumed hamstring IT band x 10, anterior and lateral planks x 10 each and l/s stabilization exercises with swiss ball x 15, recumbent bike x 10 min, treadmill at 1.2 mph x 10 min[]"). They are not, however, particularly probative of plaintiff's functional abilities outside of the physical therapy context.

In addition, many of the treatment notes indicate that plaintiff responded well to treatment, and report improvement in plaintiff's condition and abilities. See e.g., Tr. 1202, 1203, 1204, 1211 (noting reduced pain following treatment); Tr. 1218 (noting reduced "tightening & pain following" treatment); Tr.

44

1237 ("[p]atient with diminishing trigger points and improving
lumbar active range of motion bilaterally[]"); Tr. 1240
("[p]atient with improving spinal segmental motion and
centralization of back pain"); Tr. 1243 ("[p]atient with
improving abdominal musculature recruitment and posture
alignment[]"); Tr. 1244 ("[p]atient with improving carryover
with home program and good centralization of back pain[]"); Tr.
1252 ("[p]atient with much improved endurance and recruitment of
abdominal musculature"); Tr. 1265 ("[i]mproved pain ROM slight
improvement"); Tr. 1269 (improved "ROM noted"); Tr. 1277 (noting
reduced pain but continued "tightness & difficulty putting on
shoes"); Tr. 1281 (noting reduced "stiffness following"
treatment); Tr. 1296 ("[s]lowly improving ROM & strength"); Tr.
1371 ("[m]ild improvements ROM & pain").

    The "Progress Notes," which appear to have been completed
periodically by plaintiff's physical therapists, similarly
indicate that while plaintiff continued to experience back pain,
he benefitted from treatment and showed improvement. See, e.g.,
Tr. 1188 (plaintiff "made some gains [with] ROM"); Tr. 1261
(plaintiff "slowly progressing [with] gait[,] strength & ROM");
Tr. 1264 (noting plaintiff's pain was "3-5/10" and "some
improvements in function & pain"); Tr. 1316 (noting plaintiff
"has improved[,]" "sitting $\geq$ 30 min[,] walking $\geq$ 30 min"); Tr.
1320 (noting patient's "improved strength[,]" "walking > 40

min[,]" "able [to] sit > 1 hr"); Tr. 1321 (indicating improved "ROM 50%[,]" "[a]ble to walk > 40 min[,]" "strength 5/5").

Thus, the PT Records generally provide support for the ALJ's findings, including his conclusion that "while the record documents some limitation due to the claimant's impairments, it does not show the significant level of limitation alleged by the claimant." Tr. 39.

For these reasons, the ALJ committed no error in his consideration of plaintiff's PT Records.

C.   The RFC Determination

Plaintiff argues that the RFC determination was flawed because it did not adequately account for plaintiff's physical limitations. See Doc. #23-1 at 14-18. Plaintiff contends that "[a]ll of the[] ... limitations" in the RFC "exceed [plaintiff's] capacity according to Dr. Onyiuke, Community Health Center records, PT records, and [plaintiff's] testimony." Id. at 15. Defendant responds that the ALJ committed no error because he "included limitations in the RFC to account for Plaintiff's limitations that were supported by the record as a whole[.]" Doc. #35-1 at 19.

The question before the Court is not "whether there is substantial evidence supporting the appellant's view[,]" but "whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir.

46

2013). Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." Greek v. Colvin, 802 F.3d 370, 374 n.2 (2d Cir. 2015); see also 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is determined "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3), 416.945(a)(1), (3).

The Court finds that the ALJ's RFC determination is supported by substantial evidence.

First, substantial evidence supports the ALJ's finding that plaintiff can "occasionally lift and carry 20 pounds[]" and "frequently lift and carry 10 pounds[.]" Tr. 36. Dr. Kuslis opined that plaintiff can occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. See Tr. 80.[15] Dr. Williams opined that plaintiff can occasionally lift and/or carry twenty-five pounds and frequently lift and/or carry ten pounds. See Tr. 107. Dr. Krompinger opined only that plaintiff cannot lift over twenty pounds. See Tr. 1410. Even Dr. Onyiuke indicated that plaintiff could occasionally lift and carry less than ten pounds, could rarely lift and carry twenty

---

[15] As noted, see supra n.9, plaintiff does not challenge the weight assigned to Dr. Kuslis' opinion.

pounds, and could never lift and carry fifty pounds.[16] See Tr. 1144. Neither plaintiff's testimony nor his extensive PT Records suggest that plaintiff's condition prevents him from lifting and carrying the amount of weight set forth in the RFC. Moreover, on the October 2017 Questionnaire, plaintiff indicated that he "can lift heavy weights without increased pain." Tr. 1386.

Second, substantial evidence supports the ALJ's determination that plaintiff can "stand and walk for 6 hours in an 8-hour day[]" and "sit for 6 hours in an 8-hour day[,]" but he "must be able to change positions between sitting and standing every 30 minutes." Tr. 36. Both Dr. Kuslis and Dr. Williams opined that plaintiff could "stand and/or walk" and sit, with normal breaks, for "[a]bout 6 hours in an 8-hour workday[.]" See Tr. 80, 107. Plaintiff testified that standing and walking helped alleviate his pain, see Tr. 63, 68-69, and that he often "walk[s] around the little park[.]" Tr. 65. On the October 2017 Questionnaire, plaintiff checked boxes next to the following statements: "I can sit in any chair as long as I like[]" and "I can stand as long as I want without increased pain." Tr. 1386. He also checked a box next to the statement "[p]ain prevents me from walking more than 1 mile[,]" but did

---

[16] The form also asked Dr. Onyiuke to check a box indicating how often plaintiff could lift and carry "10 lbs." Tr. 1144. Dr. Onyiuke left this question blank.

not check boxes indicating that he "can only walk with crutches or a cane[,]" or that his pain "prevents [him] from walking more than 1/4 mile" or "1/2 mile." Tr. 1386.

Importantly, the RFC allows plaintiff to change positions every thirty minutes, such that he would never be required to sit or stand for longer than thirty minutes at a time. See Tr. 36. This limitation accounts for the fact that some of plaintiff's treatment notes suggest that plaintiff's pain increased "with prolonged standing and sitting[.]" Tr. 921; see also Tr. 520 (June 23, 2016, treatment note from CHC: plaintiff's pain can "get wors[e] due to prolonged standing, but sitting helps[]"); Tr. 533 (December 22, 2016, treatment note from CHC: plaintiff "states he cannot sit for any prolonged length of time[]"). However, the PT Records indicate that plaintiff can sit, stand, and walk for periods of at least thirty minutes at a time. See, e.g., Tr. 1316 (PT progress note: plaintiff "has improved[,]" "sitting $\geq$ 30 min[,] walking $\geq$ 30 min"); Tr. 1320 (PT progress note: plaintiff has "improved strength[,]" "walking > 40 min[,]" "able [to] sit $\geq$ 1 hr"); Tr. 1321 (PT progress note: plaintiff "[a]ble to walk > 40 min"); see also Tr. 1256 (PT evaluation form listing "shifting, changing positions[,]" as "[a]ctivities that decrease pain"). Thus, the ALJ's determination that plaintiff can sit, stand, and walk for six hours out of an eight-hour workday, so long as he

not be required to sit or stand <u>for more than thirty minutes at a time</u>, is supported by substantial evidence.

    <u>Third</u>, substantial evidence supports the ALJ's finding that plaintiff can "occasionally climb ramps and stairs[]" and "never climb ladders, ropes, or scaffolds[.]" Tr. 36. Indeed, these climbing limitations are as or <u>more</u> restrictive than those suggested by each of the medical opinions in the record. Dr. Kuslis and Dr. Williams each opined that plaintiff can <u>frequently</u> climb ramps and stairs and can <u>occasionally</u> climb ladders, ropes, or scaffolds. <u>See</u> Tr. 81, 107. Dr. Onyiuke checked boxes to indicate plaintiff can occasionally climb stairs and rarely climb ladders. <u>See</u> Tr. 1144.

    <u>Fourth</u>, substantial evidence supports the ALJ's conclusion that plaintiff "can occasionally balance, stoop, kneel, crouch, and crawl[.]" Tr. 36. Again, this limitation is <u>more</u> restrictive than that suggested by the state agency physicians. Dr. Kuslis opined that plaintiff could occasionally balance and <u>frequently</u> stoop, kneel, crouch, and crawl, <u>see</u> Tr. 81, and Dr. Williams opined that plaintiff could occasionally balance and stoop, and <u>frequently</u> kneel, crouch, and crawl. <u>See</u> Tr. 107. Dr. Krompinger opined only that plaintiff could not bend repeatedly. <u>See</u> Tr. 1410. Plaintiff has pointed to no specific record that suggests these particular limitations exceed plaintiff's capabilities. While Dr. Onyiuke indicated that plaintiff could only rarely

twist, stoop, crouch, and squat, see Tr. 1144, the ALJ
considered that opinion and appropriately gave it little weight.
Therefore, substantial evidence supports the postural
limitations in the RFC.

The Court's role "is not to decide the facts anew, nor to
reweigh the facts, nor to substitute its judgment for the
judgment of the ALJ. Rather, the decision of the ALJ must be
affirmed if it is based upon substantial evidence even if the
evidence would also support a decision for the plaintiff."
Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). The
Court has reviewed the entire record, and concludes that the RFC
determination is supported by substantial evidence.

D.   The Credibility Determination

Finally, plaintiff argues that the ALJ's "credibility
determinations are not supported[.]" Doc. #23-1 at 18. The ALJ
found that plaintiff's "medically determined impairments could
reasonably be expected to cause the alleged symptoms[,]" but
that plaintiff's "statements concerning the intensity,
persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence
in the record[.]" Tr. 37.

Plaintiff's credibility argument is somewhat confusing. He
suggests that the ALJ erred by using certain examples of
plaintiff's activities as evidence that plaintiff is not

51

disabled. See id. at 18-21. Plaintiff contends that it was error to discuss these activities –- such as shoveling snow, attending church, and grocery shopping –- without providing necessary context, and states that "[d]rawing speculative inferences without giving the claimant an opportunity to clarify is akin to trial by ambush." Id. at 19. Defendant responds that "[t]he ALJ appropriately concluded that Plaintiff's ability to perform a range of daily activities established a greater level of functioning than alleged." Doc. #35-1 at 9.

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of [his] pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted).

An ALJ must assess the credibility of a plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c). In making this assessment, the ALJ should consider factors relevant to plaintiff's symptoms, "such as [his] daily activities, duration and frequency of pain, medication, and treatment." Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017); see also 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). The ALJ must consider all evidence in the record. See SSR 16-3P, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017).

Plaintiff argues that the examples of plaintiff's daily activities referenced by the ALJ in his decision "cannot be considered substantial evidence[]" to support the credibility determination. Doc. #23-1 at 19.

However, the ALJ properly considered all of the evidence in the record in assessing plaintiff's credibility. For example, the ALJ considered the objective medical evidence. See Tr. 37 ("Examination showed spasm to the paraspinal muscles, pain with extension, pain with flexion, and mild pain with full back flexion[.]"); id. (discussing plaintiff's spinal MRI); Tr. 38 (plaintiff's "hardware remained intact and he had no focal neurological deficit"). The ALJ also considered plaintiff's

53

"medication[] and treatment." Jazina, 2017 WL 6453400, at *7;
see Tr. 37 (plaintiff "was prescribed Toradol and was referred
to physical therapy"); id. (plaintiff "was prescribed oxycodone
... [and] was able to keep working for a few more months with
the use of this pain medication"); id. (plaintiff "underwent an
epidural steroid injection, but reported no improvement in his
pain"); Tr. 38 (plaintiff "was not taking any pain medication to
manage his pain[]"); Tr. 39 (plaintiff "was treated
conservatively with a lidocaine patch"). Further, the ALJ
considered plaintiff's reports of pain, and referenced them
throughout his decision. See Tr. 36 (Plaintiff "testified that
he has constant back pain. He experiences tightness and a pins
and needles sensation."); Tr. 37 (Plaintiff "complained of pain
that was 10/10 in terms of intensity, radiated to his left knee,
and was not alleviated with medication[.]"); id. (plaintiff
"reported continued pain"); Tr. 38 (plaintiff "was able to
grocery shop with some increased pain"); id. (plaintiff reported
"that he continued to have daily pain").

Additionally, the ALJ considered plaintiff's daily
activities. See Tr. 37 (Plaintiff "plays cards with friends,
watches television, and spends time with family."); id.
(Plaintiff "was able to engage in some snow removal" and "attend
church[.]"); Tr. 38 (Plaintiff "was able to grocery shop[.]").
Plaintiff argues that these snapshots of plaintiff's activities

are not indicative of his functional abilities. However, the record contains other examples of plaintiff's activities that provide support for the ALJ's credibility determination. See, e.g., Tr. 56 (plaintiff's testimony that he drives "three to four times[]" per week); Tr. 63 (plaintiff's testimony that "keep[ing] active[]" including by "get[ing] in the water, the pool[,]" and walking on the treadmill at physical therapy helps with his pain); Tr. 65-66 (plaintiff's testimony that he is able to travel to visit his daughter, and that he "see[s] a couple of friends and stuff like that and go[es] to their house, we play cards and stuff[]"); Tr. 1386 (October 2017 Questionnaire indicating that plaintiff "can take care of [him]self normally without causing increased pain[,]" that his "social life is normal and does not increase [his] pain[]").

Plaintiff contends that the ALJ improperly cherry-picked anecdotes regarding plaintiff's activities to support his credibility determination, without providing the appropriate context. A careful review of the ALJ's decision and of the record, however, belies this characterization. The ALJ properly considered the entire record in assessing plaintiff's credibility, and his determination is supported by substantial evidence. Accordingly, the ALJ committed no error.

**VI. <u>CONCLUSION</u>**

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner [**Doc. #23**] is **DENIED**, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #35**] is GRANTED.

SO ORDERED at New Haven, Connecticut, this 22nd day of July, 2021.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
